IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-CV-00412-FL

| | |
|---|---|
| TIMOTHY BELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| BANK OF AMERICA AND LAJUNE ) | |
| RAY, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on Defendants' motion for summary judgment. [DE-18]. Plaintiff, proceeding *pro se*, has responded to Defendants' motion [DE-22], and Defendants have replied [DE-23]; accordingly, the matter is ripe for disposition. The parties have not consented to jurisdiction of the magistrate judge; therefore, the motion is considered here as a recommendation to the District Court. *See* 28 U.S.C. § 636(b)(1)(B); *see also* Local Civil Rule 72.3(c). For the reasons set forth below, it is recommended that Defendants' motion for summary judgment be granted.

## I. PROCEDURAL HISTORY

On July 6, 2012, Defendants Bank of America and Lajune Ray (collectively, "Defendants") removed this action from Cumberland County Superior Court to this court. Plaintiff Timothy Bell ("Plaintiff") alleges that Defendants retaliated against him in violation of "retaliation law" and the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301, *et seq.*, and seeks $10 million dollars in damages. Compl. at 2 [DE-1-1]. On July 11, 2012, Defendants filed an Answer [DE-7], generally denying the allegations and raising several affirmative

defenses. On November 30, 2012, Defendants filed the instant motion for summary judgment, to which Plaintiff filed a response in opposition on December 26, 2012, and Defendants filed a reply on January 9, 2013.

## II. STATEMENT OF FACTS

Plaintiff was employed by Bank of America from September 2003, until he resigned on January 2, 2013. Dep. of Timothy Bell ("Bell Dep.")[1] at 28:6-8; Defs.' Reply Br. Ex. A [DE-23-1]. At the time of the events alleged in the complaint, plaintiff worked at the Fayetteville Downtown Banking Center as a sales and service specialist, assisting customers with loans and mortgages and working on the teller line. Bell Dep. at 28:9-24, 31:2-4, 130:13-18, 196:4-11. Plaintiff has also served in the Air Force Reserves since December 2009, and is assigned to Dobbins Air Force Base ("Dobbins") in Marietta, Georgia. *Id.* at 8:23-9:9, 11:23-25. Dobbins is approximately 380 to 400 miles, or a six and one-half hour drive, from Plaintiff's home in Raeford, North Carolina. *Id.* at 12:7-16. Plaintiff is required to attend two days of training monthly at Dobbins, which generally takes place on the first Saturday and Sunday of each month, and Plaintiff must report for duty no later than 8:00 p.m. on the Friday immediately preceding his duty weekend, with training beginning at 6:00 a.m. on Saturday. *Id.* at 12:17-24, 12:25-13:9; Decl. of LaJune Ray ("Ray Decl.") ¶ 12 [DE-19-4].

On April 6, 2012, Plaintiff applied for an assistant manager position with Bank of America. *Id.* at 120:7-8, 140:15-18. On that same date, he received an email from Susan Tuttle, the recruiter assigned to assist with the hiring process, stating that she would like to speak with him about the

---

[1] Various excerpts from Bell's deposition were filed by both parties, in support of their respective briefs, and can be found at Docket Entry Numbers 21 and 22-1.

2

position. Pl.'s Mem. in Opp'n Ex. B [DE-22-2]. Plaintiff claims that he was told he was qualified for the position and that he would be interviewed, but on May 6, 2013, he received an email notification that he would not be moving forward in the application process. *Id.* Ex. A at 73 [DE 22-1].

Plaintiff's monthly reserve training at Dobbins was scheduled for the weekend of May 5-6, 2012, and on April 24, 2012, he received notice that he was scheduled to work at Bank of America until 6:15 p.m. on Friday, May 4, 2012. Bell Dep. at 47:7-10. Prior to May 4, 2012, Plaintiff was not scheduled to work on the Friday immediately preceding a training weekend and typically left around 12:00 p.m. to drive to Dobbins. *Id.* at 27:2-4, 84:12-16. Plaintiff expressed concern to LaJune Ray, the banking center manager, that if he was required to work until 6:15 p.m., he would not be able to timely report to Dobbins for reserve duty. *Id.* at 48:3-15. Ray informed him that she needed staff and that he would be required to work all day on Fridays going forward. *Id.* at 47:11-12.

Due to some confusion regarding Plaintiff's reporting time at Dobbins, Ray contacted Plaintiff's reserve unit and was informed that he must report no later than 8:00 p.m. on Friday, May 4, 2012. Ray Decl. ¶ 11-12. Based on that information, Ray informed Plaintiff that he could leave work at 1:00 p.m on that Friday. *Id.* ¶ 13. Plaintiff responded the he might still be late, because a 1:00 p.m. departure would allow only thirty extra minutes of travel time and there was highway construction and traffic congestion along his anticipated route to Dobbins; however, he ultimately agreed to leave at 1:00 p.m., because the branch was short staffed. Bell Dep. at 58:13-59:4. Plaintiff suggested to Ray that if it did not work out, or if he got in any trouble, that he would come back to her and attempt to work out another time for him to leave. *Id.* at 59:5-8.

3

On May 4, 2012, Plaintiff left work at 1:25 p.m. to travel to Dobbins. *Id.* at 59:9-14. After leaving the branch, Plaintiff stopped at Wal-Mart to buy and install new wiper blades for his car and bought lunch at a McDonald's drive-through, beginning his drive to Dobbins at approximately 2:00 p.m. *Id.* at 64:6-14, 65:11-15, 66:20-25, 67:8-10. After approximately forty-five minutes, Plaintiff pulled over and took a two-hour nap, continued on for an additional three hours, pulled over again briefly to attempt a second, unsuccessful nap, and was delayed by highway construction and heavy Atlanta traffic before arriving at Dobbins sometime after 11:00 p.m. *Id.* at 67:11-68:13. Plaintiff approached his reserve supervisor to discuss his late arrival and to ask for assistance getting more time off from work to accommodate his reserve duty and was told that he could not report late and that his employer would have to work something out. *Id.* at 73:9-74:11. Prior to this instance, Plaintiff had also reported for reserve duty after 8:00 p.m. on three prior occasions. *Id.* at 23:4-6.

Upon returning to work on May 8, 2012, Plaintiff approached Ray to discuss the need for a different work schedule preceding his reserve duty weekends and explained that he had to pull over after falling asleep driving and had reported late to Dobbins. *Id.* at 88:11-89:23. Ray indicated that she would not change Plaintiff's departure time from 1:00 p.m. and, as their conversation continued, Plaintiff closed the door at Ray's request, because she said he was yelling at her and being loud in front of customers. *Id.* at 90:18-91:25. Plaintiff told Ray that he believed her unwillingness to allow him to leave earlier than 1:00 p.m. was unlawful, because he was required to timely report for his reserve duty. *Id.* at 91:5-9.

Later that day, while Plaintiff was working on the teller line, he placed a call to the Advice and Counsel division at Bank of America to receive further guidance on the issue of his departure

4

time prior to reporting for reserve duty. *Id.* at 97:3-14. Ray saw Plaintiff on the phone while customers were waiting in line and called out his name, pointing to the customers. *Id.* at 168:20-169:1. Ray did not know that Plaintiff was talking to Advice and Counsel. *Id.* at 169:2-5; Ray Decl. ¶ 19. Plaintiff responded to Ray, "Thanks, one-second," and completed the call in approximately one minute or less. Bell Dep. at 169:12-22. Ray viewed Plaintiff's failure to immediately end his call and assist the customers as insubordinate behavior and contacted Advice and Counsel to obtain guidance on how to address the behavior. Ray Decl. ¶ 20-21.

On May 10, 2012, Plaintiff received a written warning from Ray for inappropriate behavior–failing to end a phone conversation and assist a customer when asked. Bell Dep. Ex. 5. With respect to the issue of Plaintiff's departure time prior to reserve duty, he was subsequently informed by Ray's supervisor, Marcus Cox, that he could leave between 11:30 a.m. and 12:00 p.m. on Fridays immediately preceding his reserve duty weekends. *Id.* at 134:10-14.

Plaintiff claims that Defendants retaliated against him in violation of USERRA by denying him a promotion to the position of assistant manager. Defendants have moved for summary judgment with respect to Plaintiff's claims

### III. STANDARD OF REVIEW

Summary judgment is appropriate where an examination of the pleadings, affidavits, and other proper discovery materials before the court demonstrates "that there is no genuine dispute as to any material fact," thus entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). When the moving party has carried its burden under Rule 56, the nonmoving party must do more than simply show that there is

some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations & footnote omitted) (quoting Fed. R. Civ. P. 56). The court must view the facts in the light most favorable to the nonmovant, drawing inferences favorable to that party if such inferences are reasonable. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, there must be more than a factual dispute; the fact in question must be material, and the dispute must be genuine. Fed. R. Civ. P. 56(a); *see Anderson*, 477 U.S. at 248. A dispute is only "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"A document filed *pro se* is to be liberally construed." *Lee v. AT & T Mobility Servs. LLC*, No. 5:11-CV-294-FL, 2013 WL 1246747, at *4 (E.D.N.C. Mar. 27, 2013) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted)); *Wojcicki v. Aiken Technical Coll.*, 360 F. App'x 484, 487 (4th Cir. 2010) (a *pro se* Title VII litigant is entitled to have pleadings read liberally). However, "a district court is not required to recognize obscure or extravagant claims defying the most concerted efforts to unravel them. . . . The special judicial solicitude with which a district court should view such pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed." *Id.* (quoting *Weller v. Dep't of Soc. Servs. for City of Baltimore*, 901 F.2d 387, 391 (4th Cir. 1990) (internal quotation marks omitted)).

## IV. APPLICABLE LAW

USERRA's stated purpose is threefold:

6

> (1) to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service;
>
> (2) to minimize the disruption to the lives of persons performing service in the uniformed services as well as to their employers, their fellow employees, and their communities, by providing for the prompt reemployment of such persons upon their completion of such service; and
>
> (3) to prohibit discrimination against persons because of their service in the uniformed services.

38 U.S.C. § 4301(a)(1)-(3). In furtherance thereof, USERRA provides that "[a] person who is a member of . . . or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, . . . or obligation." 38 U.S.C. § 4311(a). "An employer shall be considered to have engaged in actions prohibited . . . under subsection (a), if the person's membership . . . is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership." *Id.* § 4311(c). *See generally Staub v. Proctor Hosp.*, — U.S. —, 131 S. Ct. 1186, 1190-91 (2011).

With respect to retaliation claims, USERRA provides that "[a]n employer may not discriminate in employment against or take any adverse employment action against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter . . . or (4) has exercised a right provided for in this chapter." *Id.* § 4311(b). "The initial inquiry in a USERRA retaliation claim is whether the employee exercised his rights under the USERRA, thereby placing him within the ambit of § 4311(b)." *Bunting v. Town of Ocean City*, 409 F. App'x 693, 696 (4th Cir. 2011) (citing *Wallace v. San Diego*, 479 F.3d 616, 624 (9th Cir. 2007)).

"[O]nce the employee shows by a preponderance of the evidence that his protected activities were a motivating factor in the adverse employment action, the employer must show that the employer would have taken the same action without regard to the protected activities." *Id.* "To establish a certain factor as a motivating factor, a claimant need not show that it was the sole cause of the employment action, but rather that it is one of the factors that a truthful employer would list if asked for the reasons for its decision." *Id.* at 696 (citations omitted). "Unlike the familiar *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), framework for Title VII discrimination cases, USERRA imposes a more stringent standard on the employer to demonstrate that its adverse employment actions were not pretextual." *Id.* at 695 n.*.

## V. ANALYSIS

### A. Retaliation Claim Under USERRA

#### 1. Failure to Promote

Plaintiff alleges that he was denied a promotion in retaliation for requesting additional time off from work in order to timely report for his reserve duty. *See* Compl. at 1-2. Defendants contend that Plaintiff cannot establish the essential elements of a retaliation claim under USERRA and that his claim, thus, fails as a matter of law. Specifically, Defendants argue that Plaintiff was denied the assistant manager position prior to engaging in the alleged protected activity and that, therefore, Plaintiff cannot show a causal link between the protected activity and the alleged employment action. Plaintiff responds that the protected activity occurred before he was denied the assistant manager position.

The parties first disagree as to when Plaintiff engaged in a protected activity under USERRA.

Plaintiff contends that the protected activity occurred on April 24, 2012, when he first informed Ray that he could not work until 6:15 p.m. on May 4, 2012, because it would not allow him to timely report for reserve duty. Defendants contend that Plaintiff's general expression of concern does not constitute protected activity, and that it was not until May 8, 2012, two days after plaintiff was notified that he would not be promoted to assistant manager, that he engaged in protected activity by complaining to Ray that her actions in asking him to work until 1:00 p.m. were unlawful.

It is not necessary to determine when the protected activity occurred, because even assuming, *arguendo*, that Plaintiff engaged in protected activity prior to being notified that he would not be promoted to assistant manager, there is insufficient evidence in the record to support a finding by a preponderance of the evidence that the protected activity was a motivating factor in the adverse employment action. There is no evidence that Ray was involved in any way with the hiring process for the assistant manager position. The recruiter, Tuttle, evaluated the candidates and determined that Plaintiff was "minimally qualified," but that "other applicants have stronger relatable experience and/or skills," and the recruiter submitted two other candidates to the banking center manager, Karla Hutchins, for consideration. Decl. of Patricia Quintero ("Quintero Decl.") ¶ 16-20 & Ex. 1 [DE-19-2]. Hutchins selected one of the other two candidates for the assistant manager position. Decl. of Karla Hutchins ¶ 5-6.

Furthermore, the temporal proximity between Plaintiff's complaint to Ray and the adverse employment action, twelve days, is insufficient under the facts and circumstances of this case to show that the protected activity was a motivating factor. *See Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006) (citing *Sheehan v. Dep't of the Navy*, 240 F.3d 1009, 1014

9

(Fed. Cir. 2001) (noting that temporal proximity is one of a "variety of factors" that courts can use to determine improper motivation under USERRA)). Here, there were a number of candidates, including Plaintiff, who were notified on May 6, 2012, that they were not chosen for the assistant manager position, Quintero Decl. ¶ 18, which undermines any inference that the timing of the adverse employment action was related to Plaintiff's prior complaint to Ray.

In sum, no reasonable factfinder could conclude, based on the evidence in the record, that Plaintiff was denied the assistant manager position in retaliation for exercising a right under USERRA.

### 2. Written Warning

Plaintiff next alleges that he received a written warning in retaliation for calling Advice and Counsel regarding his request for additional leave in order to timely report for reserve duty. Defendants contend that the evidence does not support Plaintiff's allegation and that he was disciplined for insubordination.

USERRA prohibits an employer from taking an "adverse employment action" against an employee for engaging in protected activity. 38 U.S.C. § 4311(b). An "adverse employment action" is one that results in a "materially adverse change in the terms and conditions of an individual's employment." *Hunt v. Klein*, No. 10 CV 02778(GBD), 2011 WL 651876, at *5 (S.D.N.Y. Feb. 10, 2011), *aff'd*, 476 F. App'x 889 (2d Cir. 2012) (quoting *Sanders v. New York City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)); *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000). *Cf. James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) (applying the same definition of "adverse employment action" in the context of Title VII). "It is

'more disruptive than a mere inconvenience, and might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.'" *Hunt*, 2011 WL 651876, at *5 (quoting *Galabya*, 202 F.3d at 640 (quotations, citations, and alterations omitted)).

The record contains an email in which Plaintiff states that his Advice and Counsel representative was told by Cox that Plaintiff could not move to another banking center or another position as a result of the written warning. Pl.'s Mem. in Opp'n Ex. F [DE-22-6]. However, in his deposition, Plaintiff testified that there were no positions that he wanted to apply for, presumably aside from the assistant manager position for which he did apply, and that he only "wanted an opportunity to move if need be underneath LaJune's management." Bell Dep. at 173:1-7. Thus, Plaintiff has not presented sufficient evidence that the written warning actually precluded him from applying for another position or resulted in any other change in the terms and conditions of his employment. *See id.* (concluding that disciplinary letters placed in the plaintiff's file were not an adverse employment action). Accordingly, the written warning cannot serve as a basis for Plaintiff's retaliation claim.

### 3. Reduction in Hours

Plaintiff alleges, for the first time in his deposition, that his work hours were cut from 40 to 36.75 during the week of June 16-22, 2012, and from 40 to 39 during the week of July 21-24, 2012, in retaliation for his request for additional leave time related to his reserve duty. Plaintiff does not make this allegation in his complaint and cannot use argument opposing summary judgment to

11

amend his pleadings. *See, e.g., Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 617 (4th Cir. 2009) ("[A] plaintiff may not raise new claims after discovery has begun without amending his complaint.") (citations omitted); *Barclay White Skanska, Inc. v. Battelle Mem'l Inst.*, 262 F. App'x 556, 563, 2008 WL 238562, at *6 (4th Cir. Jan. 29, 2008) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.") (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)); *Swann v. Source One Staffing Solutions*, 778 F. Supp. 2d 611, 622 (E.D.N.C. 2011) (holding that plaintiff may not use a responsive brief to a summary judgment motion to amend the pleadings). Moreover, Plaintiff's claim is without merit.

It is undisputed that after Plaintiff notified Ray that he was scheduled to work only 36.75 hours the week of June 16-22, 2012, Ray promptly corrected the schedule. Bell Dep. at 174:5-177:15. Therefore, Plaintiff suffered no adverse employment action as a result of the June 16-22, 2012 scheduling issue. With respect to the July 21-27, 2012 schedule, the record indicates that all employees (except one employee taking vacation leave) were scheduled for less than 40 hours that week, not by Ray, but instead by a floating manager, Amanda Mann, who testified that she did so to reduce employee overtime. *Id.* at 179:17-180:2; Decl. of Amanda Mann ¶ 5-8 [DE-19-5]. Plaintiff's unsupported speculation to the contrary is insufficient to create a question of fact on this issue. *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) ("Unsupported speculation is not sufficient to defeat a summary judgment motion."). Moreover, Plaintiff also testified that he worked only 20 hours at most that week, because he went out on short term disability. Accordingly, Plaintiff suffered no adverse employment action as a result of the July 21-27, 2012 scheduling issue and, alternatively, has failed to present sufficient evidence that the

protected activity was a motivating factor for the reduction in his hours. Thus, the reduction in hours cannot serve as a basis for Plaintiff's retaliation claim.

### 4. Ineligibility for Promotions or Transfers for One Year

Plaintiff alleges, for the first time in his deposition, that Cox made him ineligible for promotions or transfers for one year, in retaliation for his request for additional leave time related to his reserve duty. Plaintiff does not make this allegation in his complaint and has provided no detail with respect to this allegation in his deposition or in his response to the motion for summary judgment. *See* Compl. 1-2; Bell Dep. at 121:2-16. Furthermore, as discussed above, Plaintiff testified that there were no positions he wanted to apply for, presumably aside from the assistant manager position for which he did apply, and that he only "wanted an opportunity to move if need be underneath LaJune's management." Bell Dep. at 173:1-7. Thus, Plaintiff has failed to show that he suffered an adverse employment action as a result of the alleged limitations on his ability to apply for promotions or transfers. Finally, evidence in the record indicates that the alleged limitations on promotions or transfers was a result of his write up, *see* Pl.'s Mem. in Opp'n Ex. F, and Plaintiff has presented no evidence to support his speculation that the protected activity was a motivating factor. Accordingly, the alleged limitations cannot serve as a basis for Plaintiff's retaliation claim.

### 5. Hostile Work Environment

Finally, in his response to the summary judgment motion, Plaintiff alleges that he was subjected to a hostile work environment. Plaintiff does not make this allegation in his complaint or provide any detail with respect to this allegation in his deposition or response to the summary judgment motion. *See* Compl. 1-2. Accordingly, Defendants should be granted summary judgment

13

on this claim. *See Swan*, 778 F. Supp. 2d at 622. Furthermore, Plaintiff's claim fails as a matter of law.

It is unsettled as to whether USERRA provides a cause of action based on a hostile work environment, but those courts that have recognized such a claim have applied the standard from Title VII case law. *See, e.g., Mock v. City of Rome*, 851 F. Supp. 2d 428, 434 (N.D.N.Y. 2012) (applying standard from Title VII caselaw on hostile work environment to claim under USERRA; conduct must have been so severe or pervasive that it altered the conditions of employment and created an abusive working environment). *See also Staub*, 131 S. Ct. at 1191 (recognizing that USERRA is very similar to Title VII). In the context of Title VII, a hostile work environment has been described by the Fourth Circuit as "harassing behavior that is so severe or pervasive as to render the workplace objectively hostile or abusive." *Patterson v. Cnty. of Fairfax*, 215 F.3d 1320 (4th Cir. 2000) (citation omitted). *See also Conner v. Schrader-Bridgeport Int'l, Inc.*, 227 F.3d 179, 184 (4th Cir. 2000) ("A 'hostile work environment' is also often referred to as an 'abusive work environment.'") (citing *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986)).

Assuming, *arguendo*, that a hostile work environment claim under USERRA is cognizable and properly before the court, the conduct alleged by Plaintiff–that Defendants denied him a promotion, issued him a written warning, cut his hours, and denied him the opportunity to apply for a new position or transfer to another branch–is not sufficiently severe or pervasive so as to render the workplace objectively hostile or abusive. *See Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745, 753 (4th Cir. 1996) (working environment must be "hostile or deeply repugnant," not "merely unpleasant," to be actionable). Accordingly, the alleged hostile work environment cannot serve as

14

a basis for Plaintiff's retaliation claim.

In sum, Plaintiff has failed to produce sufficient evidence to support a retaliation claim under USERRA, and it is recommended that Defendants be granted summary judgment on this claim.

**B.     Other Claims**

In addition to Plaintiff's retaliation claim under USERRA, Plaintiff alleges a general claim under "retaliation law." Compl. at 2. At Plaintiff's deposition, Plaintiff clarified that he was asserting claims under the North Carolina Retaliatory Employment Discrimination Act ("REDA"), N.C. Gen. Stat. § 95-240, *et seq.*, and for defamation and assault with a deadly weapon. Bell Dep. at 119:2-16. Additionally, in Plaintiff's response to Defendants' motion for summary judgment, he raised a claim under 42 U.S.C. § 1983. Not only are Plaintiff's claims not properly before the court, *see Swan*, 778 F. Supp. 2d at 622, but the claims also fail as a matter of law.

First, in order to bring a claim under REDA, a plaintiff must first file a complaint with the North Carolina Department of Labor within 180 days of the alleged violation and receive a right-to-sue-letter. *See Satterwhite v. Wal-Mart Stores E., L.P.*, No. 5:11-CV-363-BO, 2012 WL 255347, at *3 (E.D.N.C. Jan. 26, 2012) (citing N.C. Gen. Stat. § 95–242; *Brackett v. SGL Carbon Corp.*, 158 N.C. App. 252, 580 S.E.2d 757, 760 (2003)). In his response to Defendants' summary judgment motion, Plaintiff asserts that he filed a claim with the United States Department of Labor with respect to his USERRA claim. Pl.'s Mem. in Opp'n at 14 & Ex. I. However, there is no evidence that Plaintiff has satisfied the exhaustion requirement with respect to his REDA claim. Therefore, Plaintiff's REDA claim fails as a matter of law, and it is recommended that Defendants be granted summary judgment on this claim.

15

Second, Plaintiff cannot satisfy the elements of a defamation claim. Under North Carolina law, to establish a claim for defamation *per se*, the Plaintiff must show that "(1) defendant spoke or published base or defamatory words which tended to prejudice him in his reputation, office, trade, business or means of livelihood or hold him up to disgrace, ridicule or contempt; (2) the statement was false; and (3) the statement was published or communicated to and understood by a third person." *Cummings v. Lumbee Tribe of North Carolina*, 590 F. Supp. 2d 769, 774 (E.D.N.C. 2008) (quoting *Friel v. Angell Care, Inc.*, 113 N.C. App. 505, 509, 440 S.E.2d 111, 113-14 (1994)). "When stating a claim for defamation *per quod*, a plaintiff must plead and prove special damages and malice, in addition to the aforementioned elements of a claim for defamation *per se*." *Id.* (citing *Eli Research, Inc. v. United Commc'ns Grp., LLC*, 312 F. Supp. 2d 748, 757 (M.D.N.C. 2004)). "In the employment context, agents and employees of a single employer are not considered third persons to the employer or to each other." *Reikowski v. Int'l Innovation Co. USA, Inc.*, No. 3:12CV854-GCM, 2013 WL 526489, at *3 (W.D.N.C. Feb. 11, 2013) (citing *Satterfield v. McLellan Stores*, 215 N.C. 582 (1939)). "Therefore no publication occurs when statements are only communicated between officers, employees and agents of a single employer." *Id.*

Here, the allegedly defamatory communication was between Ray and Cox, who is Ray's supervisor, both employees of Defendant Bank of America. Bell Dep. at 204:5-22, 206:2-18. Therefore, the allegedly defamatory communication was not published by Defendants to a third party. *See Lee*, 2013 WL 1246747, at *8 (concluding that statements in emails generated internally by defendant and only read by defendant's employees did not satisfy the requirement that the statement be published to a third party). *But see White v. Trew*, 720 S.E.2d 713 (N.C. App. 2011)

(holding that statements contained in an employee's annual review and subsequently shared with other management employees could constitute a published communication because the individual who read the communications was independent of the process by which the communication was produced), *rev'd on other grounds*, 736 S.E.2d 166 (N.C. 2013). Because there is no evidence that Defendants published defamatory statements about Plaintiff to a third party, it is recommended that Defendants be granted summary judgment on this claim.

Third, Plaintiff's claim that Ray assaulted him with a deadly weapon by forcing him to drive his vehicle while sleepy is without merit. To state a claim for assault under North Carolina law, a plaintiff must plead the elements of "intent, offer of injury, reasonable apprehension, apparent ability, and imminent threat of injury." *Russ v. Causey*, 732 F. Supp. 2d 589, 604-05 (E.D.N.C. 2010) (citing *Hawkins v. Hawkins*, 101 N.C. App. 529, 533, 400 S.E.2d 472, 475 (1991); *Dickens v. Puryear*, 302 N.C. 437, 444, 276 S.E.2d 325, 330 (1981)). Plaintiff contends that Ray forced him to drive without getting enough rest and that he fell asleep driving and could have killed himself or others. Bell Dep. at 202:25-203:10. Among other deficiencies, there is no evidence of intent on the part of Ray. Accordingly, Plaintiff's claim of assault fails as a matter of law, and it is recommended that summary judgment be granted for Defendants on this claim.

Finally, in Plaintiff's response to Defendants' motion for summary judgment, he asserts a claim under 42 U.S.C. § 1983. Section 1983 provides for liability against state actors. 42 U.S.C. § 1983. Defendants are private entities and there is no evidence that they were acting under the color of state law. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 181 (4th Cir. 2009) ("'[M]erely private conduct, no matter how discriminatory or wrongful[,]' fails to qualify as state action.")

17

(quoting *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citations omitted)). Accordingly, it is recommended that Defendants be granted summary judgment on Plaintiff's § 1983 claim.

### C. Costs and Attorney's Fees

Defendants request that the court award costs incurred in this action, including reasonable attorney's fees. This court's local rules provide that "[a] prevailing party may request the clerk to tax allowable costs, other than attorney's fees, in a civil action as part of a judgment or decree by filing a bill of costs," and such requests must be filed within fourteen days after entry of judgment. Local Civil Rule 54.1(a)(1). Further, "[t]he general rule regarding attorneys' fees is that parties must pay their own attorneys' fees in the absence of a statute or enforceable contract providing for the award of such fees." *First Citizens Bank & Trust Co. v. Oil Screw Little Lady*, 963 F. Supp. 506, 509 (E.D.N.C. 1997) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 256, (1975); *Bakker v. Grutman*, 942 F.2d 236, 237 (4th Cir. 1991)). Defendants have cited no authority for an award of attorney's fees. Accordingly, it is recommended that Defendants' request for costs, including attorney's fees, be denied at this time.

### VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Defendants' motion for summary judgment [DE-18] be GRANTED with the exception of the request for costs and attorney's fees.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review

by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

Submitted, this the 12 day of July 2013.

Robert B. Jones, Jr.
United States Magistrate Judge